IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO.  2:12cr30-MEF |
| | ) | |
| ANTHONY TYRONE JONES | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court is Defendant's Motion to Suppress (Doc. #25).  Defendant seeks to suppress "all evidence obtained as a result of the search of [Defendant's] vehicle [on] January 28, 2012" and "any statements made by [Defendant] thereafter in Jackson Hospital immediately following this incident."  Def.'s Mot. (Doc. #25) at 1.

On May 9, 2012, the undersigned held an evidentiary hearing on the Motion.  Thomas Neill Thompson ("Agent Thompson"), Special Agent with the Drug Enforcement Administration in Montgomery, and Charlton Martin ("Officer Martin"), Alabama State Trooper, testified at the hearing.  Defendant was present at the hearing and did not testify.

On May 18, 2012, as instructed by the court, the parties filed supplemental briefs addressing the issue of whether the automobile exception was applicable to this case.  *See* Docs. #38 & 39.

Upon consideration of the Motion to Suppress, the testimony at the evidentiary hearing, and the briefs, the undersigned Magistrate Judge RECOMMENDS that the Motion to Suppress (Doc. #25) be GRANTED in PART and DENIED in PART.

## I.   FACTS

Based on the testimony at the hearing held on May 9, 2012, and to a preponderance of the evidence, the court finds the operative facts as follows:[1]

In January 2012, Agent Thompson was conducting a drug trafficking investigation. Sometime in January 2012, Agent Thompson obtained information from a confidential source ("CS") that a black male going by the name "Mookie" was engaged in the distribution of cocaine. The CS further indicated that Mookie lived near Atlanta, Georgia and transports crack cocaine to upper level narcotics distributors. According to the CS, Mookie used a telephone with the number 404-380-9931. Agent Thompson issued an administrative subpoena on Sprint, the phone provider, requesting current subscriber information and recent toll activity for the telephone assigned that number. The information received from Sprint indicated the number was assigned to a pre-paid cellular telephone ("cell phone") and that no subscriber information was available.

On January 19, 2012, the CS advised Agent Thompson that Mookie would be making a drug run from Atlanta, Georgia to Troy, Alabama on January 20, 2012. Agent Thompson corroborated this information with Investigator Eric Ernsberger, Troy Police Department, who also received information from another informant who also indicated that "Mookie" would be traveling to Troy on the weekend of January 20-22, 2012 to complete a drug run.

On January 20, 2012, Agent Thompson requested a search warrant from the

---

[1] The court reaches findings of fact at a suppression hearing based on a preponderance of the evidence. *United States v. Beechum*, 582 F.2d 898, 913 n.16 (5th Cir. 1978) (citing *Lego v. Twomey*, 404 U.S. 477, 489 (1972)).

2

Honorable Charles S. Coody, United States Magistrate Judge, which allowed Agent Thompson to receive "pings" with the location of the cell phone for a thirty-day period.[2] Agent Thompson began receiving "pings" with longitudinal and latitudinal coordinates for the cell phone on January 20, 2012.  At the time Agent Thompson began monitoring the cell phone, the phone was located in Atlanta, Georgia.

On January 28, 2012, Agent Thompson began receiving "pings" indicating that the cell phone was heading towards Alabama.  Agent Thompson contacted Officer Martin and advised him that the target cell phone was in Newnan, Georgia and asked if Officer Martin was in a position to respond to assist.  Officer Martin responded that he was.

From his office, Agent Thompson made Officer Martin aware of the direction in which the phone was headed.  With this information, Officer Martin arrived at a gas station in Waugh, Alabama.  While at the gas station, Officer Martin identified an individual matching the description of the individual known as Mookie and driving a car displaying Georgia plates.  Officer Martin began following Defendant, who was traveling west on Highway 80, East of Pike Road.

Upon following Defendant for a stretch of road, Officer Martin observed Defendant's vehicle was following the car in front of him too closely.  Officer Martin stopped Defendant's vehicle to conduct a traffic stop.  Officer Martin asked Defendant if he had a

---

[2] Essentially, Sprint supplied information to Agent Thompson via emails sent directly to his telephone.  The emails contained longitudinal and latitudinal coordinates and indicated how precise these coordinates were within meters.  Along with the emails was a link to a map indicating the location of the telephone.  Hearing Tr. at 6-7.

driver's license.  Defendant said yes, but did not retrieve the license.  Officer Martin then asked Defendant if he could see the license and Defendant retrieved the license from his wallet.  Defendant stated that he was not the owner of the vehicle and Officer Martin asked to see the registration and insurance information for the vehicle.  Defendant searched through papers in the glove box.  Officer Martin asked Defendant to continue to look for the registration information.  A check on the license identified the driver as Tommie Lewis Jones, Jr..  Upon returning to the passenger door, Officer Martin asked Defendant if he had located the registration and insurance information.  Defendant indicated that he had not. Defendant was asked to exit the vehicle in order to separate Defendant from the car and for officer safety, due to what Officer Martin considered to be excessive movements by the Defendant, and to check the Vehicle Identification Number on the car.  Defendant did not exit the vehicle and instead asked what was going on.  Officer Martin indicated he needed to complete the traffic stop.  At that point, Defendant accelerated his vehicle and fled the scene of the traffic stop and a high-speed chase ensued.

During the pursuit, Officer Martin advised a dispatcher that he observed Defendant "throwing small items out the passenger window" just south of Pine Acres Drive.  Hearing Tr. at 41; Martin Aff. (Doc. #25-1) at 29.  The vehicle chase ended when Defendant struck a police unit driven by Alabama Bureau of Investigation Agent Jeff Nelson ("Agent Nelson").  Defendant's vehicle impacted the rear of Agent Nelson's vehicle, spinning Defendant's vehicle around 180 degrees.  Defendant climbed out of the driver's side window

4

and fled on foot.  After a short foot race in a nearby wooded area, Agent Nelson took Defendant into custody.

After Defendant was apprehended, Officer Martin began a search of Defendant's vehicle.  Upon a search of the trunk of Defendant's vehicle, Officer Martin found a white box that contained several individual plastic bags.  Each plastic bag contained vacuumed sealed bags of what appeared to be marijuana, cocaine powder, crack cocaine, and ecstasy. Martin Aff. (Doc. #25-1) at 29.  At that time, Officer Martin turned all of the evidence over to Agent Thompson and Officer Doug Walters, DEA/HIDTA Task Force.

Officer Martin and Officer Scott Dunn, Montgomery Police Department, subsequently returned to the area Defendant had traveled and located a knotted plastic bag in a ditch on the side of the road containing ecstasy.  The bag recovered from the side of the road was also turned over to Agent Doug Walters.

After being placed in police custody, Defendant complained of asthma and was taken to Jackson Hospital to receive treatment.  While at the hospital, Defendant was questioned on two separate occasions.  Defendant was not given his *Miranda* rights on either occasion nor did Defendant sign a *Miranda* waiver.

## II.   DEFENDANT'S CLAIMS

Defendant presents the following issues in his Motion to Suppress:  1) whether the administrative subpoena served upon Sprint and the GPS tracking of his cell phone violated his right to privacy; 2) whether there was sufficient probable cause set forth in the search

warrant allowing his cell phone to be "pinged"; 3) whether Officer Martin's stop of Defendant's vehicle on January 28, 2012 was lawful; 4) whether the evidence obtained from the warrantless search of Defendant's vehicle and the evidence recovered from the side of the road should be suppressed as the "result of an unlawful search and seizure"; and 5) whether Defendant's post-arrest statements should be suppressed because Defendant was not *Mirandized* prior to making his statements.  Def.'s Mot. (Doc. #25) at 3-4.  The court will address each of these issues in the section that follows.

## III.   DISCUSSION

### A.   *Whether Defendant's right to privacy was violated.*

Defendant argues that his right to privacy was violated by:  1) the issuance of an administrative subpoena served upon Sprint, which allowed agents to ascertain the identity of the owner/user of Defendant's cell phone; and 2) the "pinging" of his cell phone which allowed agents to track the physical location of his cell phone.  Def.'s Mot. (Doc. #25) at 3.

"In order to have evidence suppressed based on a violation of the Fourth Amendment, a claimant has the burden of proving (1) that the search was unlawful and (2) that the claimant had a legitimate expectation of privacy."  *United States v. McKennon*, 814 F.2d 1539, 1542 (11th Cir. 1987) (per curiam) (citation omitted).  "To establish a reasonable expectation of privacy in the object of a challenged search, the defendant must show (1) that he manifested 'a subjective expectation of privacy' in that item, and (2) a willingness by

society 'to recognize that expectation as legitimate.'" *United States v. Beckett*, 369 F. App'x 52, 56 (11th Cir. 2010) (quoting *McKennon*, 814 F.2d at 1543).

### 1.    The Administrative Subpoena

Defendant's challenge to the administrative subpoena issued to Sprint is simply that the subpoenaed information "allowed Agent Thompson to ascertain the identity of the owner/user of [Defendant's] cell phone." Def.'s Mot. (Doc. #25) at 3. The Government contends that the subpoena "was a legitimate use of the Drug Enforcement Administration's subpoena power under Title 21, United States Code, Section 876(a)" and, citing to *Smith v. Maryland*, 442 U.S. 735, 742 (1979), asserts that "it is well-settled that subscribers have no legitimate privacy interest in this type of information, and thus no standing to challenge its production by a third party." Gov.'s Resp. (Doc. #33) at 1. The court agrees with the Government.

Defendant's violation of privacy argument fails in this case because the administrative subpoena was properly issued pursuant to 21 U.S.C. 876(a).[3] Moreover, Defendant fails to point to any evidence on the record to establish that he had a legitimate expectation of privacy in his subscriber information. The Court of Appeals for the Eleventh Circuit has held that "[a defendant] could not have had a reasonable expectation of privacy in the information that was obtained from the ISPs and the phone companies." *Beckett*, 369 F. App'x at 56.

---

[3] Pursuant to 21 U.S.C. § 876(a), the Attorney General has broad power in drug investigations to "subpena [sic] witnesses, compel the attendance and testimony of witnesses, and require the production of any records . . . which the Attorney General finds relevant or material to the investigation."

Specifically, the Court of Appeals noted that "[t]he investigators did not recover any information related to content. Rather, the information consisted of the identifying information transmitted during internet usage and phone calls that is necessary for the ISPs and phone companies to perform their services." *Id*.  In this case, Defendant's argument is even weaker since the request for information was obtained through an administrative subpoena and no identifying information was actually recovered.  The only information obtained through the administrative subpoena was that "the telephone is a pre-paid telephone with no subscriber information available."  *See* Aff. in Supp. of Appl. for Search Warrant at 3 (Doc. #25-1 at 41).  Thus, no information was disclosed.  Even if identifying information had been disclosed–such as Defendant's name and address–this disclosure would have been voluntarily conveyed by Defendant to the phone company and thus, in so doing, Defendant would have "assumed the risk that the company would reveal [that information] to police." *Smith*, 442 U.S. at 744.  Accordingly, this argument has no merit.

### 2. *GPS Tracking of Cell Phone*

Defendant makes two assertions in support of his argument that the GPS tracking of his cell phone violated his right to privacy.  Defendant first argues that the cell phone was tracked for an extended period of time and therefore violated his right to privacy.  Def.'s Mot. (Doc. # 25) at 5.  Next, he asserts that the "GPS tracking device is a search" and that "[s]uch a search violates [Defendant's] 4th Amendment [r]ight of privacy and to be free from unreasonable searches and seizures." *Id*.

Defendant's argument seems to focus on the fact that it was his cell phone that was tracked, indicating that what

> was gathered was information from a cell phone on the person of Mr. Jones. Technology has advanced so much that a cell phone can track minute by minute movements. A phone on the other hand tracks one's movements in a very personal way. One generally has a cell phone on his person in homes, businesses, restaurants, bathrooms and bedrooms as well as on the road.

Def.'s Mot. (Doc. # 25) at 5.

In support of his argument, Defendant cites *United States v. Jones*, —— U.S. ——, 132 S.Ct. 945 (2012). However, the *Jones* decision involved a much different question than the one before the undersigned. In *Jones*, the Supreme Court held that the Government's installation of a GPS tracking device on a vehicle and its use of that device to monitor the vehicle's movements ***without a valid warrant*** was a search in violation of Jones's rights. In this case, the Government *did* obtain a valid search warrant from the Magistrate Judge, which instructed Sprint to provide the location of the cell phone in question for a period of thirty days. Thus, because the pinging of the cell phone was done pursuant to a search warrant, this argument lacks merit.[4]

### B.   *Whether there was sufficient probable cause to issue a search warrant.*

---

[4] Furthermore, at least one other court in this circuit has found that "pinging" of a cell phone, even without a search warrant, does not violate privacy rights. *See, e.g., United States v. Ortega-Estrada*, 2008 WL 4716949, at *13 (N.D. Ga. Oct. 22, 2008) (finding that "the GPS information obtained by the Government did not reveal where the suspect was when his cellphone was 'pinged' and GPS information obtained. The GPS information obtained revealed only a general area where the suspect was at a particular time, and thus, did not invade a place where he might have an expectation of privacy or constitute a 'search' of any such place . . . then the use of the device does not require a warrant.").

Defendant challenges the search warrant issued by the Magistrate Judge allowing Agent Thompson to get physical locations of Defendant's cell phone, arguing that Agent Thompson's affidavit contained "insufficient facts to support the issuance of a search warrant. It does not fulfill the requirement that a search warrant be based on probable cause." Def.'s Mot. (Doc. #25) at 6.

The United States Supreme Court has held that "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 214 (1983).  A review of the affidavit presented to the Magistrate Judge in this case reveals there was a substantial basis that probable cause existed.

Agent Thompson's affidavit stated that the CS had previously provided reliable information. The CS was able to provide specific information including the suspect's identity—identifying the suspect as "Mookie"—and provided specific details regarding the suspect's usual route as well as information that the suspect would engage in such criminal activity in the future.  Moreover, the affidavit states that another confidential informant for the Troy Police Department confirmed the information Agent Thompson had obtained from his own confidential source.

Defendant challenges Agent Thompson's affidavit based on the fact that the

confidential informant indicated Defendant would travel to Troy on the weekend of January

20, 2012 when in fact he did not travel to Troy until January 28, 2012.  This discrepancy,

Defendant argues, "show[s] that his CI fed [Agent Thompson] bad information."  Def.'s

Mot. (Doc. #25) at 6.  Additionally, Defendant challenges the affidavit arguing that the fact

that his cell phone had communicated with an individual known to be a drug trafficker does

not establish that Defendant himself was also involved in narcotics trafficking.  Def.'s Mot.

(Doc. #25) at 6.  The problem with Defendant's arguments is that he challenges individual

pieces of information when the probable cause inquiry considers all of the circumstances

before the Magistrate Judge.  A court will find "probable cause exists to support a search

warrant when the totality of the circumstances indicates that there is a fair probability of

discovering contraband."  *United States v. Anton*, 546 F.3d 1355, 1358 (11th Cir. 2008).

Probable cause "is a fluid concept–turning on the assessment of probabilities in particular

factual contexts." *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999).

Despite the fact that the date of travel was incorrect, all of the other information on

the affidavit was accurate:  the physical description of the suspect, the fact that he would

travel from Atlanta to Troy and that he would do so on a weekend, along with the telephone

calls.  Accordingly, considering the totality of the circumstances, the court finds that all of

the facts before the Magistrate Judge provided a substantial basis for concluding that

probable cause to issue a search warrant existed.[5]

_____

[5] Further, even were the court to conclude that the underlying search warrant lacked probable
cause, the "good faith exception to the exclusionary rule" would apply. *See United States v.
Leon*, 468 U.S. 897 (1984).

### C.      *The Traffic Stop*

Defendant challenges the initial stop of his vehicle on January 28, 2012 as unconstitutional, arguing that Officer Martin did not have probable cause to make a traffic stop.  Defendant argues that "he was stopped under the pretext of following to[o] close which was factually inaccurate and only stated as a means to stop him."  Def.'s Mot. (Doc. #25) at 3. The Government, citing *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008), contends that "Trooper Martin's stop had two independent, legitimate bases:  reasonable suspicion of drug trafficking, and probable cause to believe a traffic violation had been committed."  Gov.'s Resp. (Doc. #33) at 4.

While it is true that "[t]he Fourth Amendment protects individuals from unreasonable search and seizure," the Eleventh Circuit has held that "a traffic stop is a constitutional detention if it is justified by reasonable suspicion under *Terry* [*v. Ohio*, 392 U.S. 1, 30 (1968)] or probable cause to believe a traffic violation has occurred under *Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996)."  *United States v. Chanthasouxat*, 342 F.3d 1271, 1275 (11th Cir. 2003).  Because "'[t]he touchstone of the Fourth Amendment is reasonableness[,]' . . . "[i]n order to determine whether or not a specific Fourth Amendment requirement such as probable cause or reasonable suspicion has been met, the court must determine if the officer's actions were reasonable." *Chanthasouxat,* 342 F.3d at 1275 (quoting *United States v. Knights,* 534 U.S. 112, 118 (2001) and citing *Ornelas v. United States,* 517 U.S. 690, 696 (1996)).

12

### 1.    *Reasonable Suspicion of Drug Trafficking*

The Government argues "there were ample facts known to the arresting officer to support his reasonable suspicion of drug trafficking activity" and that, therefore, the facts of this case "were undeniably sufficient to justify the minimal intrusion of a *Terry* stop." Gov.'s Resp. (Doc. #33) at 4.

Officer Martin had reasonable suspicion to conduct an investigatory *Terry* stop. Officer Martin testified that he suspected the driver of Defendant's vehicle was engaged in drug trafficking activity due to "[a]ll the information that was [previously] provided to [him] by Agent Thompson" including the physical description of the suspect, "the route" on which Defendant was traveling, the fact that, because the suspect would be traveling to Alabama from Georgia, his car was likely to have Georgia license plates and Defendant's car did in fact display Georgia plates, and the accuracy of the "ping" after Officer Martin was traveling behind the vehicle.  Hearing Tr. at 35.  Because Officer Martin was able to corroborate the informants' statements about Defendant's alleged activities based on observation, the court finds the officer had reasonable suspicion to stop Defendant's vehicle and conduct an investigatory stop pursuant to *Terry*.

### 2.    *Whether Officer Martin had probable cause to believe Defendant committed a traffic violation.*

Defendant challenges the accuracy of Officer Martin's determination that he was following too closely, arguing that "[t]he video clearly shows that [Defendant] was not following to[o] close and that Officer Martin's traffic stop was a mere pretext."  Def.'s Mot.

(Doc. #25) at 5.

The Supreme Court has held that "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996).

At the hearing, the Government presented a video from Officer Martin's dashboard camera. Officer Martin testified that, based on his observations at the time, he believed Defendant's vehicle was following the vehicle in front of it too closely. Hearing Tr. 32. Officer Martin stated that he used "the shadows between the vehicles caused by the headlights and also whether or not [he] can actually see the tail end of the car in front of the vehicle [he's] behind" as a guide. *Id.* at 33. Officer Martin testified that, based on his observations, he believed Defendant was not complying with Alabama law, which requires that "the driver of a vehicle shall leave a distance of at least 20 feet for each 10 miles per hour of speed between the vehicle that he or she is driving and the vehicle that he or she is following." Alabama Code § 32-5A-89(a) (1975). Officer Martin indicated he could only "see a very small gap with a shadow between the headlights, which in this case you get kind of a judgment from the painted lines on the roadway."[6] Hearing Tr. 33. Officer Martin also noted he observed Defendant hit his brake lights "for a few seconds," which the officer believed indicated that Defendant himself believed he was following too closely and needed to use his brakes. *Id.* at 34.

---

[6] Officer Martin indicated the distance between the dotted lines on the road are approximately thirty feet. Hearing Tr. 34.

The Government cites to Alabama Code § 32-5A-89(a) and argues that "[t]he video from Officer Martin's dash camera clearly shows Defendant was not abiding by [Alabama law], and even found himself so close to the car in front of him at one point—on a straight section of road no less—that he had to apply his brakes to avoid contact with the vehicle he was following." Gov.'s Resp. (Doc. #33) at 5-6.  The court has reviewed the video and finds Officer Martin's testimony to be credible.  Accordingly, upon consideration of the video evidence and Officer Martin's testimony, the court finds that Officer Martin had probable cause to believe that Defendant committed a traffic violation by following too closely.

As for Defendant's argument that Officer Martin's testimony that Defendant was following too closely was simply a pretext to stop him, this argument has no merit as Officer Martin's subjective intent and reasons for stopping the vehicle are irrelevant to the court's determination of whether or not there was probable cause to believe Defendant committed a traffic violation.  The Court of Appeals for the Eleventh Circuit has held that "[w]hen determining whether an officer had probable cause to believe that a traffic violation occurred, the 'officer's motive in making the traffic stop does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment.'" *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008) (internal citation omitted).  Thus, whether or not Officer Martin *wanted* to stop Defendant is irrelevant when the court concludes the evidence on the record demonstrates Defendant committed a traffic violation.

Accordingly, based on the evidence on the record, the court finds that Officer Martin

15

did have probable cause to believe Defendant had committed a traffic violation and that, therefore, the stop of his vehicle was reasonable.

**D.     Evidence Obtained from the Search of Defendant's Car and the Roadside**

Defendant challenges the warrantless search of his vehicle.  The Government asserts two positions for the search of the vehicle: 1) that the search of Defendant's car was lawful pursuant to the automobile exception to the warrant requirement; and 2) that the search of the vehicle was a valid inventory search.  The court will address each argument below.[7]

**1.     The Automobile Exception**

In general, the Fourth Amendment prohibits warrantless searches and seizures.  *See California v. Carney,* 471 U.S. 386 (1985).  However, in *Carroll v. United States,* 267 U.S. 132 (1925), the Supreme Court carved out an exception to the warrant requirement for searches of automobiles and other moving vehicles.  Under the automobile exception, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more."  *United States v. Watts*, 329 F.3d 1282, 1285 (11th Cir. 2003) (quoting *Pennsylvania v. Labron,* 518 U.S. 938 (1996) (per curiam)).  Thus, "there are only two questions that must be answered in the affirmative before authorities may conduct a warrantless search of an automobile.  The first is whether the automobile is readily mobile . . . The second prong of the test, probable cause, is determined under the facts of each case."  *Watts*, 329 F.3d at 1286.

---

[7] Although Defendant challenges whether a search incident to arrest is applicable in this case, *see* Def.'s Supp. Br. (Doc. #39) at 4, this is a not a basis the Government has put forth to justify the warrantless search of Defendant's car.

16

Upon review of the record, the court finds that the warrantless search of Defendant's vehicle was valid pursuant to the automobile exception.  First, the mobility requirement is satisfied in this case because, even though the vehicle had struck another vehicle, there is no evidence presented that Defendant's vehicle was inoperable after the impact.  Even if there had been evidence that the vehicle had become inoperable, the Government points this court to *United States v. Fields*, 456 F.3d 519, 524 (5th Cir. 2006), a case factually similar to the case at hand, to assert that the mobility requirement would still be satisfied.  In *Fields*, defendant crashed his vehicle after engaging the police in a high-speed chase.  The Court of Appeals held that the mobility requirement was satisfied because "Fields used his Impala as a readily mobile vehicle throughout the police chase and in all the events leading up to his arrest and the search in question."  *Fields*, 456 F.3d at 524.  Like in *Fields*, in this case, Defendant was able to use his car throughout the chase and "[i]f the car was not mobile at the time of the search, it was solely by virtue of [Defendant's] complete disregard of driving regulations [by engaging in a high-speed chase], and this does not entitle him to a heightened privacy interest."  *Id*.[8]

The second prong of the test, probable cause, is also satisfied given the totality of the

_____

[8] *See also United States v. Garcia*, 433 F. App'x 741, 744-45 (11th Cir. 2011) ("The mobility requirement focuses on whether the vehicle is capable of functioning, not whether it is likely to move in the near future"); *United States v. Mercado*, 307 F.3d 1226, 1229 (10th Cir. 2002) (automobile exception to search warrant requirement was applicable to vehicle that was temporarily immobile due to mechanical problem); *United States v. Rommann*, 1990 WL 66823, at *2 (6th Cir. 1990) ("The only remaining question is whether the fact that the truck was temporarily up on a jack with a wheel off dictates a finding that the [warrantless] search was illegal. We conclude that it does not.").

facts and circumstances in this case.  Prior to stopping the vehicle, Officer Martin had reason

to believe Defendant was the target of the narcotics investigation based on corroboration of

the information agents had previously received from the confidential source.  The court finds

that this prior information combined with Defendant's attempt to evade law enforcement by

fleeing the scene, throwing evidence out of his car window while he engaged police in a

high-speed chase, and then his continued attempt to flee on foot after crashing his vehicle

into a police unit is sufficient to provide probable cause to search Defendant's vehicle under

the automobile exception to the warrant requirement.

### 2. *Inventory Search*

Alternatively, the Government asserts the warrantless search was properly conducted

pursuant to an inventory.  A warrantless inventory search is reasonable when it is conducted

in good faith and pursuant to reasonable police inventory procedures.  *Colorado v. Bertine*,

479 U.S. 367, 374 (1987).  Defendant contends there was no valid inventory search because

"the government failed to introduce testimony [ . . . ] about the policies and procedures for

inventory searches of the State Troopers."  Def.'s Supp. Brief (Doc. #39) at 4.

At the hearing, the Government's position was that Officer Martin began an inventory

of the vehicle and, once he discovered drugs in the trunk of the car, the evidence was turned

over to DEA who conducted their own investigation.  Hearing Tr. 64.  The Government

argues that Officer Martin's failure to complete the inventory forms, or otherwise comply

with inventory procedures, does not invalidate the inventory search because the evidence was

turned over to DEA.  In support of its position, the Government cites to *United States v. O'Bryant,* 775 F.2d 1528, 1534 (11th Cir. 1985) and *United States v. Loaiza-Martin*, 832 F.2d 867, 869 (5th Cir. 1987) in which the Courts of Appeals for the Eleventh and Fifth Circuits held that a failure to complete inventory forms did not invalidate inventory search where the officer turned evidence from inventory search over to the Drug Enforcement Agency.  Gov.'s Supp. Resp. (Doc. #38) at 1-2.  The court agrees and finds that Officer Martin's possible failure to comply with all inventory procedures does not invalidate an otherwise valid inventory search.  Thus, alternatively, the court finds that even were the automobile exception not to apply, the warrantless search of the vehicle was a valid inventory search.

### 3.    *Evidence Recovered from the Roadside*

Although Defendant raises this issue in his "ISSUES PRESENTED," he presents no argument in support.  Def.'s Mot. (Doc. #25) at 3-4.  Defendant cannot claim an expectation of privacy with respect to evidence on the roadside since he voluntarily abandoned it. "Legitimate expectations of privacy can be abandoned."  *McKennon,* 814 F.2d at 1545. The question of abandonment is one of intent "which can be inferred from words, acts and other objective facts." *Id.* at 1546; *see also United States v. Cofield,* 272 F.3d 1303, 1306 (11th Cir. 2001). "[T]he critical inquiry is 'whether the person prejudiced by the search . . . voluntarily discarded, left behind, or otherwise *relinquished his interest in the property* in question so that he could no longer retain a reasonable expectation of privacy with regard to it *at the time*

*of the search.'" McKennon,* 814 F.2d at 1546 (quoting *United States v. Pirolli,* 673 F.2d

1200, 1204 (11th Cir. 1982)) (emphasis in original).  In this case, Defendant abandoned the

evidence when he threw it out the passenger side window and cannot evidence an expectation

of privacy in the items seized from the side of the road.

### E.    Post-Arrest Statements

In its brief, the Government concedes that any post-arrest statements given by

Defendant were given without first advising Defendant of his *Miranda* rights.  The

Government states, "that when [Defendant] was questioned in the hospital regarding injuries

he sustained during the high-speed car chase and foot race, he had not been advised of his

rights as per *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966).  . . .  The Government has

no intention of introducing evidence at trial of any statement made by Defendant after he was

taken into custody following the chase, and does not oppose the suppression of any such

statement."  Gov.'s Resp. (Doc. #33) at 6.  The court agrees that any post-arrest statements

made by Defendant should be suppressed.  *See Miranda v. Arizona*, 384 U.S. 436, 478-79

(1966).

## IV.  CONCLUSION

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge

that Defendant's Motion to Suppress (Doc. #25) be GRANTED in PART and DENIED in

PART.  The Motion should be granted as to Defendant's post-arrest statements to law

enforcement.  The Motion should be denied as to Defendant's other bases for suppression. It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before June 29, 2012**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 15th day of June, 2012.


/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE